**MOSE DENNIS v. STATE OF FLORIDA**

21 So. (2nd) 209                                    January Term, 1945
March 13, 1945                                      En Banc

*Caldwell & Parker, Millard Caldwell, Julius F. Parker* and *Leo L. Foster,* for appellant.

*J. Tom Watson,* Attorney General, and *John C. Wynn,* Assistant Attorney General, for appellee.

PER CURIAM:

This cause having heretofore been submitted to the Court upon the transcript of the record of the final judgment herein,

and briefs and argument of counsel for the respective parties, and the record having been seen and inspected, and the Court being now advised of its judgment to be given in the premises, it seems to the Court that there is no error in the said judgment; it is therefore, considered, ordered and adjudged by the Court that the judgment of the circuit court be and the same is hereby affirmed.

Affirmed.

CHAPMAN, C. J., TERRELL, BUFORD, THOMAS, ADAMS and SEBRING, JJ., concur.

BROWN, J., dissents.

BROWN, J., dissenting:

This is an appeal from an order overruling a motion for new trial, the main ground of which was the alleged insufficiency of the evidence.

In this case, the testimony, as disclosed by the record, is unusually confusing and contradictory. Even the witnesses for the State vary from each other and to some extent from themselves in their accounts of the fracas in the negro "jook joint," about midnight, which resulted in the death of a young negro man named James Rozier, but who was generally called "Deedy Boy," which was caused by a deep knife wound in the breast. There is no evidence however, that any of the persons concerned were under the influence of intoxicants.

Appellant, Mose Dennis, and Joe Eggleton, both young negro men, were jointly indicted for murder in the first degree. The indictment charged that James Rozier was killed by them by cutting him with a knife. The first trial resulted in a mistrial. During the first trial, the State introduced in evidence a "switch blade knife" with a *green* handle, which one of the witnesses testified had been taken from Mose Dennis about the time the fight ended, and that it had blood on the blade. This same knife was introduced in evidence on second trial. The defendant, Mose Dennis, testified that this knife was not his knife; that he had had one like it, except that his knife had a white handle; that it was hard to open and he had never opened it that night; that when he tried to get it out of his pocket, it fell to the floor. Later the sheriff

testified that he had arrived on the scene two hours after the difficulty, and some one in the crowd had handed him a white-handled switch blade knife. The sheriff was asked to go get it. When he returned to the court room, the knife, which had a white or pearl colored handle, was shown to Mose Dennis, and he testified that this knife was his knife. It had some blood on the outside of the handle when handed to the sheriff that night, so the sheriff testified, but none on the blade. Mose testified that he had tried to get this knife out of his pocket during the fracas, but that it fell to the floor, and he never saw it again until the sheriff brought it into court. Perhaps this incident had something to do with the jury's failure to agree at the first trial. All this was brought out again on the second trial, but to a large extent by the stenographer reading her notes taken on the first trial. This was not as impressive as the unexpected corroboration of the defendant's testimony as to the knife by the sheriff. Both knives have been brought to this Court. They are exactly alike except that the handle of one is green and the other white, and the point of the blade of the green handled knife is slightly bent, which tends to corroborate appellant's testimony that he was cut on the head during the fight. There was testimony of at least two State witnesses which tended to show that appellant, Mose Dennis, was at fault in bringing on the difficulty and that it was he, and not his co-defendant, who stabbed the deceased with a knife. But there was some testimony per contra, and there was other testimony which was more confusing than enlightening. The county judge testified that the deceased had a pretty good reputation with white people but a bad reputation among the negroes. Two white witnesses, for whom Mose Dennis had worked for considerable periods, testified to the appellant's good character. The testimony as to defendant Joe Eggleton's participation in the fracas was very meager and unconvincing, and the jury, by the court's instruction, found him not guilty, but they found defendant Mose Dennis guilty of murder in the second degree. Motion for new trial, based on the insufficiency of the evidence, was filed and overruled.

I am reluctant to reverse the trial judge in a case of this

kind, where he is asked to grant a new trial on the ground of the insufficiency of the evidence. He, like the jury, heard and saw the witnesses. But in view of the evidence as a whole, the absence of proof of previous threats, the suddenness of the encounter, and the previous good character of the defendant, I think that the verdict should not have been for a higher grade of homicide than manslaughter, and that therefore the court should either reduce the grade of the offense, or reverse for a new trial.